**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Margaritis, | No. CV-20-00807-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Vast Mountain Development Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendant's motion for summary judgment.[1] (Doc. 69.) Summary judgment is appropriate when, viewing the facts in a light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants seek summary judgment on Plaintiff's remaining claims: Count One - securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, Count Two – securities fraud in violation of A.R.S. § 44-1991, *et seq.*, Count Three - common law fraud, Count Four - breach of fiduciary duty, and Count Six - Negligent Misrepresentation. With the exception of Plaintiff's breach of fiduciary duty claim, the Court finds genuine issues of material fact preclude entry of summary judgment.

---

[1] Oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion.

**I.     Background**

When ruling on a summary judgment motion, the Court must view the facts in the light most favorable to the nonmoving party. In doing so, the Court finds that in approximately May 2016, Defendant Michael Galvis, a "money raiser" for Defendants John Owen and his company, Vast Mountain Development, Inc. ("VMD"), pitched an investment which involved extracting gold from the mine tailings of the old Congress Mine in Yavapai Arizona. They called their project the "Vast Mountain Development Congress Mine Gold & Silica Recycling Project" (the "Project"). In July 2016, Owen and Kevin Jones of Cardinal Resources ("Cardinal") met with the Arizona Department of Environmental Quality ("ADEQ") to discuss what permits would be required at different areas of the site. During that meeting and in a subsequent email to Owen, ADEQ made clear that VMD must assume responsibility for Republic Goldfields' Individual Aquifer Protection permit ("APP"), develop a closure strategy for that permit, obtain approval for that closure strategy and then complete the closure before VMD could begin processing and extracting gold from the Republic Goldfields tailings. Though Jones believed the sand plant should be exempt from the APP, from July 2016 through at least September 4, 2018, Jones' recommendation was that VMD not begin construction of a gold leaching plant until the APP issue was resolved. VMD did not make any applications or proposals to ADEQ relating to the Republic Goldfields tailings between July 2016 and November 2017.

In Fall 2016, Galvis arranged for Plaintiff to tour the Congress Mine, where he met Owen. During this visit, Owen showed Plaintiff a bar of gold, purportedly extracted from the Congress Mine tailings. Together, Owen and Galvis pitched Plaintiff on the Project, to extract and sell gold from the Congress Mine tailings. Defendants told Plaintiff that, if he invested in the Project, he would receive a "working interest" entitling him to a pro rata share of the Project's production or revenues. Owen and Galvis told Plaintiff that he could take his pro rata share of the gold produced by the Project in the form of gold doré bars like the one Owen displayed to him. Owen and Galvis acknowledged that the Project would also produce silica sand, but as a byproduct of processing the tailings for gold. No one told

Plaintiff about the need for an APP or that Cardinal had recommended that VMD not begin construction of a gold leaching plant until the APP permit issue was resolved.

After the mine tour, Owen sent Plaintiff a follow-up 30-page project memorandum (the "Sales Memo") which contained the Plan of Operations for the Project. The Sales Memo provided information about the mine's tailings, and a description of the then-current status of the Project. The Sales Memo's cover prominently depicted a stack of 4 gold bars (and nothing else), the third page depicted the pouring of a gold doré bar (and nothing else), the fifth page depicted 3 gold bars (and nothing else), and the Project timeline on page 24 depicted stacks of gold bars to represent the projected production during each of the Project's 4 years. The Sales Memo's text focused on the gold that the Project would produce, including by representing that investors will also have the option to take their share of the gold/silver in doré bars in lieu of cash.

The Sales Memo also describes a plan to produce silica sand from the tailings, but not as a separate project or process. It represented that VMD would process tailings material just once – producing gold and silica simultaneously. It stated that VMD's plant would "allow 90% recovery of gold and silver along with a silica washing system that can output over 91% pure silica, all in one single circuit. The idea is to handle the material once to output both high quality gold/silver and silica." The Sales Memo projected that the Project would produce as much as $182 million in sales and $150 million in operating profit, a return on investment of 600%.

Defendants followed up their sales pitch to Plaintiff by sending him "Project Updates" indicating that the Project was well on its way to full commercial gold production. In a July 31, 2016 Update, Defendants claimed that the Project was on schedule to reach full commercial operation in just over 5 months. The update stated that they would run the 100 ton per day plant for 30 days, accumulate data, and adjust the system as needed. From there it would take VMD approximately 4 months to expand to 2000 tons per day production. The Update also included a diagram of the production process reflecting processing of gold bearing solution.

In a September 15, 2016 Update, Defendants stated that the VMD team was thrilled to announce that the Congress Mine Gold and Silica Recycling Project officially kicked off its first month of production and that because plant construction began in July 2016 they were ready to start processing and monetizing the high-value asset that is the Congress Mine tailings. The update represented that construction of the full-scale production plant would begin in about 30 days and would be completed about 4 months after that, at which point VMD would process 2,000 tons of tailings per day. The September 15 update depicted the production process, including processed tailings ready to be transported to the leach vats to leach out gold and silver and wash the silica.

Defendants sent updates on October 31 and December 13, 2016. Both updates described modifications to the plant design but assured that leaching had begun and that modifications to the leaching system would continue, "as we are making gold" and further modifications were being made "to achieve maximum gold recovery."

The updates (1) presented gold production as a core part of the Project, (2) stated that gold and silica production would occur simultaneously, not as alternatives to one another, and (3) claimed that the Project was so far along that it was just a few months away from full-scale production. In reliance on Owen's and Galvis' representations, including those in the Sales Memo and the Updates, on September 14, 2017, Plaintiff entered into a Working Interest Purchase and Sale Agreement (the "Agreement") wherein, he agreed to pay a total of $850,000 for a 3.4% working interest in the Project.

## II. Breach of Fiduciary Duty

Defendants seek summary judgment on Plaintiff's breach of fiduciary duty claim, arguing there was no fiduciary arrangement. The Court agrees. Plaintiff's purchase of the working interest in VMD was a commercial transaction. Commercial transactions do not create fiduciary relationships unless one party agrees to serve in a fiduciary capacity. *Rindlisbacher v. Steinway & Sons Inc.,* 497 F.Supp.3d 479, 506 (D. Ariz. 2020). There is no such arrangement set forth in the Agreement. In fact, the Agreement expressly provided that VMD would not be in an agency relationship with the Plaintiff. Nothing suggests a

different arrangement was intended to exist with regard to the principals of VMD. There is no question of fact. Neither Owen nor Galvis owed Plaintiff any fiduciary duties.

### III. Securities Fraud

Proving a Rule 10(b)(5) securities fraud claim requires Plaintiff to establish (1) that Defendants made a material misrepresentation or omission of material fact; (2) that Defendants acted with scienter; (3) that there is a connection between the material misrepresentation and Plaintiff's purchase or sale of securities; (4) that Plaintiff purchased the securities in reliance on Defendants' material misrepresentation; (5) that Plaintiff suffered economic loss; and (6) Plaintiff's economic loss was caused by Defendants' material misrepresentation. *KuiZhu v. Taronis Technologies Inc.*, No. CV-19-04529-PHX-GMS, 2020 WL 1703680, at *3 (D. Ariz. Apr. 8, 2020). As for securities fraud under A.R.S. § 44-1991, Plaintiff must prove that, in connection with the sale or purchase of securities, Defendants "employed a device, scheme or artifice to defraud" or made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made not misleading.

As to both counts, Defendants argue that there are no facts supporting Plaintiff's claim that Defendants made material misrepresentations about the Project. However, when Defendants represented in the Sales Memo and the Updates that the Project was on track to move into commercial production, there is evidence that they knew there were regulatory requirements (such as the APP issue) that stood in the way. Though Plaintiff agreed that he was making a risky investment and that it is possible VMD might not extract gold in commercial quantities, there is a question of fact as to whether Defendants' failure to disclose the APP requirement was a material misrepresentation. There also are questions of fact as to whether Defendants misrepresented that gold was the core component of the project, and that gold and silica sand would be extracted simultaneously in a single process, not separately or as alternatives to one another.

As to Defendants' argument that Plaintiff suffered no economic loss, the Court is persuaded by Plaintiff's argument that the ordinary measure of damages is not applicable.

There is no public market for the working interests Plaintiff purchased. As Plaintiff argues, his investment cannot be sold, therefore his loss is his entire investment.

There is a question of fact as to whether Plaintiff's interest in VMD has any value. Defendants argue that VMD has the right to recover the gold contained in the tailings, and once VMD pivots from silica to gold production, Plaintiff will benefit. But Defendants elsewhere argue that the silica operation is a more profitable use of the tailings than attempting to recover gold. If Plaintiff is not benefitting from the more profitable use of the tailings, it is not clear how pivoting to a less profitable use will benefit him later. Plaintiff also argues that VMD cannot process the tailings to extract gold, silica, or anything else for the Project because it sold or leased the Congress Mine tailings and the minerals contained therein to Harvest Gold Silica as part of a 2019 bond transaction. Plaintiff argues that his interests are therefore worthless. If Plaintiff is correct and VMD no longer holds the mineral rights to Congress Mine tailings, the Project Plaintiff bought into does not exist.

In sum, there are numerous questions of fact about the alleged misrepresentations that prevent the Court from granting summary judgment on Plaintiff's securities fraud claims. The Court has identified some, but not all. Viewing the facts in a light most favorable to Plaintiff, the Court finds summary judgment unwarranted.

**IV.    Common Law Fraud**

Defendants ask for summary judgment on Plaintiff's common law fraud claim, making the same arguments as were made regarding the securities fraud counts—that there were no misrepresentations. For the same reasons set forth above, the Court finds that there are questions of fact precluding summary judgment.

Defendants make the additional argument that there is no evidence that they knew the subject representations were not true at the time they were made. The Court finds sufficient evidence creating a genuine issue of material fact on this issue, as well. Among other things, Owen was present at the meeting with ADEQ when it was explained that VMD must assume responsibility for Republic Goldfields' APP; he was present when it

was explained that VMD must develop a closure strategy for that permit, obtain approval for that closure strategy and then complete the closure before VMD could even begin processing and extracting gold from the Republic Goldfields tailings; and he was advised by Cardinal not to begin construction of gold leaching plant until the APP permitting issue was resolved. Summary judgment on this claim is denied.

V.  **Negligent Misrepresentation**

Defendants seek summary judgment on Plaintiff's negligent misrepresentation claim, arguing that there is no evidence of misrepresentations. However, for reasons already explained, the Court finds there is sufficient evidence to create a question of fact as to whether Defendants made material misrepresentations to Plaintiff prior to his decision to enter into the Agreement, including representations about the status of the Project, its "making gold," and the status of permits necessary to construct a gold leaching plant. Summary judgment on this claim is denied.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 69) is **GRANTED** as to Plaintiff's breach of fiduciary duty claim only. As to the other claims, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that the parties participate in a telephonic trial scheduling conference on **December 14, 2023, at 9:00 a.m**. Call-in instructions will be provided via separate email.

Dated this 29th day of September, 2023.

Douglas L. Rayes
United States District Judge